UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SMITH,

                Plaintiff,        Civil Action No. 18-10010

v.                                   Honorable David M. Lawson
                                        Magistrate Judge David R. Grand

CORIZON HEALTH, *et al.*,

                Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANT RAMESH KILARU'S MOTION
FOR SUMMARY JUDGMENT (ECF No. 114)**

This is a prisoner civil rights case commenced by plaintiff John Smith("Smith") on January 2, 2018. (ECF No. 1.) In his second amended complaint, Smith alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. §1983 against numerous defendants, including Dr. Ramesh Kilaru, M.D. ("Kilaru"), for deliberate indifference to his serious medical needs. (ECF No. 70.) Before the Court is Kilaru's motion for summary judgment, which he filed on December 18, 2019. (ECF No. 114.)[1] Smith, through his counsel, filed a response in opposition to this motion on January 15, 2020 (ECF No. 123), and Kilaru filed a reply on January 27, 2020 (ECF No.124.)

**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Kilaru's motion for summary judgment **(ECF No. 114)** be **GRANTED**.

---

[1] All pretrial matters in this case were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1). (ECF No. 13.)

## II.   REPORT

### A.   Factual Background

Smith alleges that on February 17, 2015, while he was incarcerated at the Thumb Correctional Facility ("TCF"), he injured his right shoulder while playing basketball. Smith sought medical attention from a nurse at the TCF healthcare department, and advised that he had heard a "snap" when he fell on his shoulder. (ECF No. 115, PageID.1000.) The nurse noted that there was "an obvious deformity in the right shoulder . . . There is swelling present. [Smith] is able to move arm up to the chest on the frontal plane and the side plane." (*Id.*) Smith was told to ice his shoulder for 72 hours, prescribed Motrin for pain, and told to "[d]o shoulder exercises two to three times a day to help strengthen the muscles and rotator cuff." (*Id.*, PageID.1001-02.)

Dr. Kilaru, who was employed by Corizon Health as a license physician, first examined Smith two days after his injury, on February 19, 2015. (*Id.*, PageID.1003-04.) During this appointment, Kilaru physically examined Smith, noting the following "normal" findings with respect to Smith's right shoulder: symmetrical posture; no deformities; no crepitus; negative "Hawkin's" and "Lift Off" tests; and "normal" supraspinatus, "Ext Rotation," and "shoulder shrug" strength tests. (*Id.*) Kilaru (1) instructed Smith to start physical therapy exercises seven-to-ten days after the appointment and continue as tolerated for six months, (2) prescribed prescription strength Ibuprofen, and (3) issued an order for an ice detail. (*Id.*)

On March 11, 2015, another Corizon employee performed an x-ray and diagnosed Smith with a Grade I shoulder separation without fracture. (*Id.*, PageID.1005.) Kilaru saw Smith a second time on March 24, 2015. (*Id.*, PageID.1006.) During this appointment, Smith reported that although his pain was constant, it was "dull and localized." (*Id.*) Smith's shoulder showed "mild improvement (<50%)." (*Id.*) Kilaru noted that Smith was seeing him "for X-Ray result," and that he shared the diagnosis of a Grade 1 shoulder separation. (*Id.*) Kilaru again conducted a

physical exam of Smith's shoulder, noting many of the same negative/normal findings as before, although this time, Kilaru noted a deformity in Smith's "AC Joint" and that Smith had "active painful range of motion" in his right shoulder. (*Id.*, PageID.1007.) Kilaru noted that he was advising "[c]onservative treatment" and "strengthening exercises" for Smith, as well as "Tylenol for pain."

On April 1, 2015, Smith saw a nurse and indicated that he "wants surgery." (*Id.*, PageID.1008.) A sick call was scheduled for April 3, 2015. (*Id.*) At his April 3, 2015 appointment, Smith indicated that he "does not agree with [conservative] plan of care . . . [and] feels the treatment of his shoulder condition should be surgery." (*Id.*, PageID.1009.) It was reported that Smith indicated he had "not been doing stretching exercises and that he has been using acetaminophen only when he has back pain." (*Id.*) He was "advised to perform stretching exercises 2-3 times daily, apply warm, moist pack to right shoulder and use acetaminophen for right shoulder pain relief." (*Id.*)

On April 19, 2015, Smith complained about his shoulder not improving despite "following two months of TCF Health Care recommended self-help physical therapy." (*Id.*, PageID.1010.) Smith was advised that an appointment would be scheduled. On April 24, 2015, Smith was examined by a medical provider. (ECF No. 123-1, PageID.1110.) Upon examination of his shoulder, he was found to have no tenderness, and normal range of motion, but pain with movement. (*Id.*) An order was put in for him to see Dr. Kilaru again. (*Id.*, PageID.1111.)

Smith saw Kilaru a few weeks later on May 8, 2015. (*Id.*, PageID.1113-14.) At that appointment, Kilaru examined Smith's shoulder, again finding mostly normal results and noting, "bilateral upper extremity strength is normal." (*Id..*) Kilaru indicated that he "reassured [Smith]

and discussed exercises to strengthen the shoulder." (*Id.*)  He also prescribed Naproxen for Smith's shoulder pain and "stopped" Tylenol.  (*Id.*)

Smith alleges that, from May 28, 2015 to August 17, 2015, he continued to complain of shoulder pain to TCF health care staff with some frequency.  (ECF No. 70, PageID.577-78.)  However, Kilaru had no further involvement in Smith's care until he examined Smith on August 4, 2015 for a chronic care visit, and renewed his prescriptions.  (ECF No. 123-1, PageID.1125-27.)  A nurse examined Smith again for his shoulder pain on August 19, 2015.  She reported that Smith's claims about whether he was doing the exercises prescribed by Kilaru were inconsistent.  (*Id.*, PageID.1129-31.)  Specifically, she noted, "first said he was NOT doing the recommended exercises 'because they don't work.' Contradicted himself many times, changing story to say he IS doing the exercises, 'but they aren't helping.'"  (*Id.*, PageID.1129.)  The nurse directed him to continue the exercises.  (*Id.*, PageID.1131.)

On August 26, 2015, Kilaru examined Smith for a fifth time.  (*Id.*, PageID.1132-39.)  During this appointment, Kilaru noted Smith wanted to see a specialist.  (*Id.*, PageID.1132-39.)  Consequently, on October 5, 2015, a physician at Duane Waters Hospital ("DWH") completed another x-ray.  (*Id.*, PageID.1143.)  This x-ray showed a change in appearance of the distal clavicle and a Grade IV acromioclavicular separation.  (*Id.*, PageID.1145.)  Due to the change in appearance, an orthopedic consult was requested and approved on October 19, 2015.  (*Id.*, PageID.1147.)

On October 28, 2015, Smith was assessed by Khawaja H. Ikram, D.O., an orthopedic surgeon, at Duane L. Waters Health Center.  (*Id.*, PageID.1155-56.)  X-rays were taken and reviewed by Dr. Lyle S. Mindlin, D.O.  (*Id.*, PageID.1155.)  Dr. Mindlin's impression was that Smith was suffering from an "AC separation grade II-III with associated coracoclavicular ligament

4

tear." (*Id.*) Due to inconsistencies in the x-rays, Dr. Mindlin suggested that the tests be repeated with weights. (*Id.*) After a physical exam, Dr. Ikram diagnosed an "Right shoulder AC separation, chronic" and recommended that Smith be seen at the University of Michigan for "possible intervention in this regard." (*Id.*, PageID.1156.)

On November 13, 2015, Kilaru saw Smith again. (*Id.*, PageID.1157.) Kilaru reviewed with Smith the diagnosis by Dr. Ikram's diagnosis. (*Id.*) Kilaru also informed Smith of the authorization for him to be seen at the University of Michigan. (*Id.*)

On December 7, 2015, Smith was seen by Dr. Bruce Miller, M.D. at the University of Michigan. (*Id.*, PageID.1160-72.) X-rays were taken. (*Id.*) Dr. Miller noted in his report from the visit that "[r]adiographs of the right shoulder demonstrates grade 3 AC separation with comparative films demonstrates osteolysis of the distal clavicle." (*Id.*, PageID.1166.) During the visit, Dr. Miller went over the treatment options with Smith, which included: "doing nothing, continued efforts at physical therapy, [and] surgical intervention." (*Id.*, PageID.1167.)

On January 12, 2016, Kilaru contacted Dr. Miller to discuss his assessment and recommendations for Smith's condition. (*Id.*, PageID.1179.) According to Dr. Miller's dictation and clinical notes after this conversation with Kilaru, Dr. Miller stated:

> surgical treatment for this condition is uncommon, and mostly people do just fine with nonoperative measures. In light of this, I have recommended a course of physical therapy to his shoulder as the patient has not had this treatment. Most people tolerate this condition quite well with physical therapy and activity modification.

(*Id.*) On that same day, January 12, 2016, Smith was seen by Kilaru, who advised him of Dr. Miller's assessment. (*Id.*, PageID.1173.) In the appointment notes for this visit, Kilaru stated that Smith understood that, "90% [of patients] choose Conservative approach of not having any

5

Surgery." (*Id.*) He also noted that Smith understood Dr. Miller's recommendation of "Physical Therapy before Surgery." (*Id.*)

Smith went to DWH for a physical therapy session on or around February 3, 2016. (ECF No. 70, PageID.578.) Smith alleges that following the physical therapy appointment, he continued to complain of debilitating shoulder pain to healthcare employees. (*Id.*, PageID.579.) He claimed the pain made it impossible for him to perform physical therapy exercises. Smith claims he filed and exhausted grievances related to his care, and then filed his complaint in this action on January 2, 2018. (ECF Nos. 1, 70.)

### B.   **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

*i. Standards Applicable to Deliberate Indifference Claims*

In order to prevail on his Eighth Amendment claim, Smith must prove that Kilaru was deliberately indifferent to his serious medical needs. To succeed on such a claim, Smith must satisfy two elements: one objective, and one subjective. Specifically, he must show that he had a serious medical need (the objective prong) and that Kilaru, being aware of that need, acted with deliberate indifference to it (the subjective prong). *See Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010).

With respect to the objective prong, a serious medical need must be more than "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (internal quotations omitted). Rather, "[t]he objective component requires the existence of a sufficiently serious medical need." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for doctor's attention." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004). An injury is sufficiently serious to satisfy the objective component if a reasonable doctor or patient would find it "important and worthy of comment or treatment," if it "significantly affects an individual's daily activities,"

7

or if its existence causes "chronic and substantial pain." *Sarah v. Thompson*, 109 Fed. Appx. 770, 771 (6th Cir. 2004) (citations omitted).

To satisfy the subjective prong, the plaintiff must show that the defendant possessed "a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'" *Broyles v. Corr. Medical Servs., Inc.*, 478 Fed.Appx. 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk by failing to take reasonable measures to abate it. Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment." *Broyles*, 478 Fed.Appx. at 975 (internal quotations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a

8

> substantial risk of serious harm to a prison is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted).

The law is clear, however, that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 Fed.Appx. 734, 736 (6th Cir. 2004). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

In moving for summary judgment, Kilaru argues that Smith failed to raise a material question of fact as to both the objective and subjective components of his deliberate indifference claim. Because the Court agrees that Smith's claim fails on the subjective prong, Kilaru's motion should be granted.

### ii. *Objective Component*

In his summary judgment motion, Kilaru argues that to satisfy the objective component of his Eighth Amendment claim, Smith was required to "place verifying medical evidence in the record to establish the detrimental effect" of the inadequate treatment. (ECF No. 114, PageID.988.) But this argument goes too far. As discussed above, Smith merely needed to show that he suffered an injury that clearly required treatment, which impacted his daily activities, or which caused him substantial and ongoing pain. *Sarah*, 109 Fed. Appx. at 771.

9

On February 19, 2015, shortly after his injury, Smith was seen by Kilaru at MDOC Health Services. (ECF No. 123-1, PageID.1090.) At this appointment, Kilaru noted bruising, lack of joint motion, and locking of Smith's right shoulder. (*Id.*) At another appointment with MDOC Health Services three weeks after the injury, Sharyn R. Handley, RN noted a "deformity (hard bony bump) on [Smith's right] shoulder." (*Id.*, PageID.1093.) Both Health Services visits resulted in treatment for Smith. (*Id.*, PageID.1090, 1093.) Because Smith was seen multiple times by MDOC Health Services, his injuries were noted at each of the appointments, and treatment was prescribed, it can reasonably be concluded that Smith suffered an injury that clearly required treatment; thus, Smith satisfied the first aspect of the objective component for his deliberate indifference claim. Additionally, Smith reported that his shoulder injury impacted his daily activities and caused him substantial ongoing pain.

For these reasons, the Court finds that Smith satisfies the objective component of his Eighth Amendment deliberate indifference claim.

### iii. *Subjective Component*

Although Smith showed he suffered an injury that constituted a serious medical need, even viewing the evidence in the light most favorable to Smith, which the Court must do at the summary judgment stage, *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006), he failed to create a genuine issue of material fact as to the subjective prong of his deliberate indifference claim.

This is simply not a case involving cursory treatment amounting to no treatment at all. Indeed, Smith's extensive prison medical file belies his conclusory assertion that he suffered "an eight-month lapse in treatment." (ECF No. 123, PageID.1085).

The evidence establishes that Kilaru saw Smith six times. (ECF No. 123-1.) While Kilaru prescribed treatment that was conservative in nature, Smith has not shown anything more than his

disagreement as to the adequacy or appropriateness of that treatment. At their initial visit on February 19, 2015, Kilaru physically examined Smith and noted many "normal" findings with respect to Smith's right shoulder. (*Id.*, PageID.1003-04.) Kilaru prescribed a fairly lengthy (but, as discussed below, not unusual for Smith's injury) physical therapy rehabilitation program of six months, prescribed prescription strength Ibuprofen, and issued an order for an ice detail. (*Id.*) When Smith next saw Kilaru, he exhibited mild improvement and many normal findings. (*Id.*, PageID.1006-07.) In other words, although Smith still experienced "dull and localized pain," the treatment program Kilaru had prescribed had at least some efficacy. And, an X-Ray showed only a grade 1 (i.e., mild) separation at that time. (*Id.*)

Before his next appointment with Kilaru, Smith saw a different provider, who noted he had no tenderness, and normal range of motion, albeit with pain. (ECF No. 123-1, PageID.1110.) When Smith saw Kilaru a few weeks later on May 8, 2015, he again had mostly normal results and noting, "bilateral upper extremity strength is normal." (*Id.*, PageID.1113-14.) Again, the records reflect at least some improvement and efficacy of the prescribed treatment. And, because Smith complained of ongoing pain, Kilaru altered his treatment plan and prescribed a different medication (i.e., Naproxen). (*Id.*, PageID.1113-15.) In August 2015, when Smith wanted to see a specialist, Kilaru facilitated it, and even went so far as to discuss the assessment and treatment plan with the specialist. (*Id.*, PageID.1173, 1179.) And, as discussed below, after Smith saw another specialist, Dr. Miller, Kilaru spoke with that doctor, who also recommended additional physical therapy rather than surgery. (*Id.*) Kilaru discussed this recommendation directly with Smith. (*Id.*, PageID.1173.)

In short, the evidence shows that Kilaru regularly monitored, evaluated, and prescribed treatment for Smith's shoulder separation and its symptoms. No reasonable jury could find that

Kilaru's treatment of Smith amounted to no treatment at all.  *See, e.g., Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550-51 (6th Cir. 2009) (finding that inmate's care amounted to no treatment at all when inmate presented with severe heat exhaustion and vomited during examination, but nurse provided only cursory examination and returned him to his non-air-conditioned cube with instructions to drink water and take aspirin).

At most, Smith has shown that he would have preferred to have undergone surgery rather than the more conservative treatment provided by Kilaru.  But Sixth Circuit case law makes clear that, "[a]n inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.  Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim."  *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018).  *See also, Mitchell v. Hininger*, 553 Fed. App'x 602, 605 (6th Cir.2014) (A prisoner's "desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim"); *Manley v. Leffingwell*, No. 13-CV-13876, 2014 WL 5782753, at *3 (E.D. Mich. Nov. 6, 2014).

While the foregoing provides ample support for granting Kilaru's summary judgment motion, additional record evidence further establishes the shortcomings of Smith's claim against Kilaru.  First, toward the end of Kilaru's treatment of Smith, Smith was referred to Dr. Miller, the specialist at the University of Michigan.  (*Id.*, PageID.1179.)  Importantly, Kilaru contacted Dr. Miller, and Dr. Miller advised that "surgical treatment for [Smith's] condition is uncommon," and that he was recommending "a course of physical therapy to his shoulder."  (*Id.*)  The point is not necessarily whether Dr. Miller's recommendation was correct, but that he conveyed it to Kilaru.  Kilaru cannot be said to have acted with "deliberate indifference" by adhering to the recommendation of the specialist that Smith himself requested.  (*Id.*, PageID.1173.)

Second, Kilaru's summary judgment motion is supported by the expert report of Dr. Paul J. Drouillard, D.O. (ECF No. 114-2.) Dr. Drouillard, who is Board Certified in Orthopaedic Surgery, opines that he reviewed the relevant medical records in this case, and that "[t]he vast majority of people recover from the injury Mr. Smith received with conservative care, and without surgery. Surgical intervention would not guarantee an improvement in either function or symptoms. I believe the treatment here was appropriate and reasonable." (*Id.*, PageID.998.) In his response to Kilaru's summary judgment motion, Smith asks the Court to strike Dr. Drouillard's report for a few reasons, none of which are developed, and then states, "[f]or a more robust analysis as to why [Dr. Drouillard's] report should be struck from the record, please see Plaintiff's concurrently filed motion to strike." (ECF No. 123, PageID.1076-78.)

Smith's handling of this issue is puzzling. First, Smith's "request to strike was not made by motion, but rather through argument contained in his response to [Kilaru's] motion. This is improper." *Burniac v. Wells Fargo Bank, N.A.*, 2015 WL 401018, at *3 (E.D. Mich., Jan. 28, 2015). *See also Marsh v. Rhodes*, No. 14-12947, 2016 WL 11469776, at *1 n.1 (E.D. Mich. Apr. 21, 2016) ("it is not proper to file a separate motion within a response brief"); Fed. R. Civ. P. 7(b) (providing that "a request for a court order must be made by motion."). Second, despite recognizing the need for a more "robust" analysis of the issues, and contrary to the representation in his response brief about a "concurrently filed" motion to strike, Smith never filed such a motion. Third, at least without more, Smith's conclusory assertions that Dr. Drouillard's opinions are "speculative" and not based on a reliable method lacks merit, as medical doctors in a particular field are well-qualified to offer expert testimony based on their training and experience. *See e.g., Persaud v. United States*, No. 1:14 CR 276, 2018 WL 6042598, at *3 (N.D. Ohio Nov. 19, 2018)

(holding that "[t]he physicians were clearly qualified to be experts based on their education and experience.").[2]

While Dr. Drouillard's opinion about the "reasonableness" of Dr. Kilaru's medical treatment may go too far to be admissible at trial, *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016), Smith has not shown why, as an orthopaedic surgeon, Dr. Drouillard's opinion that the "vast majority of people recover from the injury Mr. Smith received with conservative care, and without surgery," and that surgery "would not guarantee an improvement in either function or symptoms" should be stricken. Nor did Smith present any evidence to counter Dr. Drouillard's opinion. Thus, while the Court would reach the same overall conclusion even absent Dr. Drouillard's opinion, it does further support a finding that Kilaru's prescribed treatments for Smith did not constitute "deliberate indifference."

In sum, all Smith offers is that he would have preferred a surgical approach to treat his shoulder injury rather than the more conservative course of treatment ordered by Kilaru. Such a claim amounts to nothing more than alleged medical malpractice which does not satisfy the subjective component of an Eighth Amendment deliberate indifference claim. *Grose v. Corr.*

---

[2] As explained in *Jones v. Pramstaller*, 874 F. Supp. 2d 713, 722 (W.D. Mich. 2012):

> Rule 702 states that expertise may be based on "knowledge, skill, experience, training, or education." Fed.R.Evid. 702. An expert need not have all of these qualifications; so long as his particular background gives him expertise relevant to the opinions he offers, the court should find him qualified. *See Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir.1994); *Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 851 (6th Cir.1981) ("[T]he only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth."). The courts read Rule 702 liberally and will qualify experts so long as their expertise is likely to be helpful. *Morales v. Am. Honda Motor Co.*, Inc., 151 F.3d 500, 516 (6th Cir.1998) (quoting *Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir.1984)).

*Medical Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010) ("[o]rdinary medical malpractice does not satisfy the subjective component."). Accordingly, Kilaru is entitled to summary judgment. *Rhinehart*, 894 F.3d at 740; *Mitchell*, 553 Fed. App'x at 605; *Manley*, 2014 WL 5782753, at *3.

### III.    CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Dr. Kilaru's motion for summary judgment **(ECF No. 114)** be **GRANTED**.

Dated: July 10, 2020                                          s/David R. Grand
Ann Arbor, Michigan                                        DAVID R. GRAND
                                                                        United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2020.

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager