UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SMITH,

            Plaintiff,            Case Number 18-10010
v.                                                Honorable David M. Lawson
                                                  Magistrate Judge David R. Grand
CORIZON HEALTH CORPORATION,
RAMESH KILARU, BADAWI
ADELLATIF, and KEITH PAPENDICK,

            Defendants.
_____/

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANT KILARU'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff John Smith, an inmate in the custody of the Michigan Department of Corrections, filed a complaint alleging that his constitutional rights were violated by the poor care he received from prison medical personnel to treat a shoulder injury he suffered while in custody. The case was referred to Magistrate Judge David R. Grand to conduct all pretrial proceedings. The parties engaged in substantial pretrial motion practice, which resulted in the dismissal of several claims and previously named defendants. Eventually the claims were winnowed to those remaining against Corizon and several of its physician employees alleging deliberate indifference to serious medical needs via the Eighth Amendment and 42 U.S.C. § 1983. One of the remaining individual defendants, Dr. Ramesh Kilaru, has filed a motion for summary judgment arguing that the claims against him personally are not sustained by the evidence in the record. On July 10, 2020, the magistrate judge issued a report recommending that the Court grant Dr. Kilaru's motion and dismiss with prejudice the plaintiff's claims of deliberate indifference against him. The plaintiff timely filed his objection to the recommendation of dismissal, and Dr. Kilaru filed a response. The matter now is before the Court for a fresh review.

I.

The magistrate judge included in his report a comprehensive recitation of the facts suggested by the record. In sum, a fair reading of the evidence advanced by the plaintiff would present the following course of events to a jury.

On February 17, 2015, while he was incarcerated in the State of Michigan's Thumb Correctional Facility, plaintiff John Smith injured his shoulder while playing basketball. He was seen by a prison nurse and reported that he heard a "snap" when he fell on his shoulder. The nurse noted an "obvious deformity" and "swelling" along with some movement limitation. The nurse told Smith to ice the shoulder for three days and prescribed Motrin for pain. She also directed him to "do shoulder exercises" two or three times daily to help the shoulder recover.

The moving defendant, Dr. Ramesh Kilaru, first saw Smith at a follow up appointment two days after the injury. Dr. Kilaru noted a "normal" appearance and range of movement in the shoulder. He instructed Smith to begin physical therapy exercises seven to ten days after the appointment and continue with the exercises "as tolerated" for six months. Dr. Kilaru also prescribed Ibuprofen and ice packs to relieve shoulder pain. Smith was x-rayed by another Corizon treater on March 11, 2015 and diagnosed with a "Grade 1" shoulder separation without fracture. Dr. Kilaru saw Smith again on March 24, 2015 and reviewed the x-rays and diagnosis of shoulder separation. Kilaru then noted a deformity in the shoulder joint and "painful range of motion," but he continued the prescription of a pain reliever and physical therapy.

On April 1, 2015, Smith appeared at sick call and told a nurse that he was not satisfied with the treatment of his shoulder and "want[ed] surgery." He reported that he had not been doing the exercises as directed and was using the pain reliever only for back pain. The nurse advised Smith to continue doing shoulder exercises two or three times each day and apply moist heat and take

Tylenol to relieve pain. Smith appeared for another appointment on April 19, 2015, where he again complained about his lack of recovery, and a follow up with Dr. Kilaru was scheduled.

On May 8, 2015, Dr. Kilaru saw Smith again and noted "mostly normal" shoulder condition and upper body strength, with some pain on movement. Dr. Kilaru reiterated the recommendation of shoulder exercises to strengthen the joint and substituted a prescription of Naproxen for Tylenol to treat the ongoing shoulder pain. According to Smith, he complained repeatedly about his shoulder pain to other prison healthcare providers during appointments in May through August 2015. However, he was not seen by Dr. Kilaru again until August 4, 2015, when Kilaru renewed the prescription of painkillers. Notes by a nurse who examined Smith on August 19, 2015 indicated "inconsistent" reports of whether he was doing the exercises as directed; but the nurse again advised Smith to continue the daily physical therapy.

On August 26, 2015, Kilaru again examined Smith, who stated that he wanted to see a specialist for his shoulder problem. He was referred for a hospital visit, and on October 5, 2015 he was transported to Duane Waters Hospital where further x-rays were taken. The radiologist diagnosed a Grade 4 shoulder separation and referred Smith for an orthopedic consult. Smith was x-rayed again on October 28, 2015, and an orthopedic specialist who reviewed the films diagnosed him with a Grade 2-3 separation with ligament tear. Due to the inconsistent results, Smith was referred for further exams and "possible intervention."

Dr. Kilaru saw Smith again on November 13, 2015, reviewed the preceding specialist diagnoses, and informed Smith he was authorized to be seen at the University of Michigan for further exams. On December 7, 2015, Dr. Bruce Miller at the University of Michigan examined Smith and ordered more x-rays, then diagnosed him with a Grade 3 shoulder separation. During the visit, Dr. Miller reviewed the possible treatments, which he described as "doing nothing,

continued efforts at physical therapy, [or] surgical intervention." During a follow up with Dr. Kilaru on January 12, 2016, Kilaru reviewed Dr. Miller's diagnosis and noted that Smith understood Miller's recommendation of "physical therapy before surgery," and that "90% of patients choose [a] conservative approach of not having any surgery" for the plaintiff's type of injury.

Smith attended one physical therapy session at Duane Waters Hospital on February 3, 2016. However, he says that he was unable to continue physical therapy exercises due to constant shoulder pain, and he asserts that, despite repeated complaints in later follow up appointments, no further effective treatment was provided. He submitted grievances regarding the lack of care, which were denied. In January 2018, he filed his complaint in this case.

After discovery, Dr. Kilaru filed his motion for summary judgment. After full briefing, the magistrate judge concluded that Smith had presented sufficient evidence for a jury to find that the objective component of his Eighth Amendment claim was sustained, because he suffered ongoing substantial pain from an injury that obviously required medical treatment. However, the magistrate judge found that Smith could not prevail on the subjective element of his claim, which required him to demonstrate that a doctor perceived and disregarded an objectively apparent need for medical care.

In his objection, the plaintiff argues that the record contains enough evidence for a jury to conclude that Dr. Kilaru persisted in the prescription of a course of conservative treatment while knowing that the therapy ordered had proven ineffective in alleviating the plaintiff's injury. The plaintiff contends that under the controlling law the deliberate election of a demonstrably ineffective program of care is sufficient to carry his burden on the subjective element of the Eighth Amendment claim.

II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1). "The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The magistrate judge recommended that the Court grant Dr. Kilaru's motion for summary judgment based on his conclusion that the plaintiff had not offered evidence sufficient to support a jury finding that Dr. Kilaru subjectively perceived and deliberately ignored an objectively manifested serious need for medical treatment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such

> a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009). "The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558 (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

The plaintiff alleges that Dr. Kilaru's deficient treatment violated his right to receive adequate medical care, which is guaranteed by the Eighth Amendment and made enforceable against state officials via 42 U.S.C. § 1983. "Section 1983 of Title 42 of the United States Code imposes civil liability on those individuals who, acting under color of state law, deprive a citizen of, among other things, his federally guaranteed constitutional rights." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194, 197-98 (2004)). "To state a claim under § 1983, a plaintiff must set forth facts that, when favorably construed, establish: (1) the deprivation of a right secured by the Constitution or laws of the United States; (2) caused by a person acting under the color of state law." *Ibid.* (citing *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). The plaintiff must establish the liability of each individual defendant by that person's own conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

As noted above, the right to adequate treatment allegedly violated here is secured by the Eighth Amendment, which "prohibits the imposition of 'cruel and unusual punishments' upon prisoners." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting U.S. Const. amend. VIII). "'[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs.'" *Richmond v Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). "An Eighth Amendment claim on these grounds is comprised of an objective and a subjective component." *Id.* at 937-38. "Thus, 'a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.'" *Id.* at 938 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "'[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Ibid.* (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004)). "The subjective component requires a showing that the 'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* at 939 (quoting *Farmer*, 511 U.S. at 837). "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Ibid.* "Failure by . . . jail medical staff to adhere to a prescribed course of treatment may satisfy the subjective component of an Eighth Amendment violation." *Ibid.*

The magistrate judge concluded that the plaintiff adequately had established the objective element of his Eight Amendment claim. However, Judge Grand also found that the plaintiff could not demonstrate subjective indifference by Dr. Kilaru because it was undisputed that some medical

attention was given to the plaintiff's injuries on each interaction with Dr. Kilaru, and the plaintiff had demonstrated at most merely a difference of opinion with his doctors over whether his preferred alternative of surgery should have been tried instead. The magistrate judge reasoned that such a difference of opinion between patient (inmate) and doctor will not suffice to make out the subjective component because "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). That is because "mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference." R&R at PageID.1209 (citing *Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004)).

The plaintiff contends that in reaching that conclusion, the magistrate judge disregarded evidence from the medical record suggesting that Dr. Kilaru knew that his prescribed treatment of painkillers and physical therapy exercises had been tried by the plaintiff for eight months with no benefit, and in that time his injury had worsened from a Grade 1 to a Grade 3-4 separation. The plaintiff points to numerous notes in his prison medical file documenting his ongoing complaints of pain and his protests that he was unable to perform physical therapy exercises due to the pain. *See* Medical Records, ECF No. 123-1 PageID.1091, 1103, 1105-1106, 1112, 1114, 1117, 1120, 1127, 1129, 1132-33, 1136. The plaintiff asserts that from that record, and his own deposition testimony attesting to his ongoing pain and the ineffectiveness of exercise therapy, a jury could find that Dr. Kilaru knew that he was in constant pain and had tried physical therapy as prescribed, and that his separation had gotten worse over the course of eight months, but, nevertheless, the defendant continued to prescribe the same demonstrably ineffective treatment plan.

Notwithstanding the evidence noted above, the plaintiff's claim fails as a matter of law because there is no evidence in this record from which a jury could infer that Dr. Kilaru knew his prescribed treatment was ineffective and that he disregarded that knowledge when a better option was available and preferred. There is no medical evidence in the record suggesting that the plaintiff's preferred treatment of surgical intervention would have been any more effective in resolving his injury, or that the prescribed treatment of physical therapy and pain relievers was medically unreasonable during any stage of the plaintiff's prognosis. The facts here are on all fours with those in the leading case of *Estelle v. Gamble*, 429 U.S. 97, 107 (1976), which established the principle that courts should avoid second-guessing medical judgments, and mere disagreements between a prisoner and his doctor about the best course of treatment cannot supply the basis of an Eighth Amendment claim. As the Court observed in *Estelle*:

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period: by Dr. Astone five times; by Dr. Gray twice; by Dr. Heaton three times; by an unidentified doctor and inmate nurse on the day of the injury; and by medical assistant Blunt six times. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is based solely on the lack of diagnosis and inadequate treatment of his back injury. The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

*Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (citations and quotations omitted); *see also Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976) ("[M]edical care [must] be provided to one who is incarcerated and may be suffering from serious illness or injury. This is not to say that every

request for medical attention must be heeded nor that courts are to engage in the process of second-guessing in every case the adequacy of medical care that the state provides."). The facts here are materially indistinguishable from those in *Estelle*, which the Court held was a "classic example" of an attempt improperly to convert an ordinary claim of medical malpractice into a constitutional tort under the Eighth Amendment.

Federal courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). "Where a plaintiff alleging an Eighth Amendment violation has received some medical care for an injury, he must show that the medical treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *6 (6th Cir. Feb. 24, 2017) (quoting *Alspaugh*). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). In the context of a section 1983 claim for deliberate indifference, "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). The plaintiff has made no showing of "woefully inadequate" treatment here, and instead he points only to his own speculation that a different course of treatment would have been superior. Crucially, however, he has not offered any medical opinion testimony from his treating doctors, or any other medical professional, suggesting that the prescribed treatment of physical therapy ever was medically inappropriate. To the contrary, the medical professionals who saw the plaintiff all uniformly recommended and reaffirmed Dr. Kilaru's prescribed course of treatment.

Moreover, Dr. Miller's diagnostic notes even indicated that "doing nothing" was a valid therapeutic course, along with surgery and "continued efforts at physical therapy."

The plaintiff obviously believes that surgery would have led to a better outcome, but he has nothing to back that up beyond his own speculation (which is unsupported by any medical evidence in the record) that it might have helped. The case therefore becomes nothing more than a difference of opinion between a prisoner and prison medical staff over the appropriateness of the treatment chosen, which as a matter of law cannot sustain a claim of deliberate indifference. *Weatherspoon*, 2017 WL 3923335, at *6 ("While Weatherspoon may disagree with this diagnosis and speculate that his pain could be due to other illnesses . . . a mere difference of opinion between the plaintiff and his doctor regarding diagnosis and treatment does not state a claim under the Eighth Amendment."); *Umbarger*, 93 F. App'x at 736 ("Umbarger's complaint, at most, alleged negligence and his disagreement with the medical treatment that he received during his incarceration, which are insufficient to state an Eighth Amendment claim.") (citing *Estelle*); *see also Bochner v. Martin County*, No. 17-14422, 2019 WL 7842321, at *7 (S.D. Fla. Dec. 30, 2019), *report and recommendation adopted*, 2020 WL 502347 (S.D. Fla. Jan. 31, 2020) ("Plaintiff points to nothing in the record which demonstrates the course of treatment provided him by defendants 'was so far afield [from accepted professional practice] as to allow a jury to infer deliberate indifference.'" (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 680 (11th Cir. 2008)).

Federal courts confronting materially identical circumstances repeatedly have held that prescribing pain medication and physical therapy for the sort of shoulder injury encountered here does not amount to deliberate indifference. *See Bochner*, 2019 WL 7842321, at *6 (holding that the delay of a surgical referral for a shoulder injury did not amount to deliberate indifference); *Dausch v. Corizon Corp.*, No. 15-421, 2017 WL 3521746, at *5 (M.D. Fla. Aug. 16, 2017)

(holding that treatment of a shoulder injury with medication and physical therapy was not "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness' to constitute a violation of the Eighth Amendment"); *see also Berman v. Durkin*, No. 13-0136, 2017 WL 1215814, at *12 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017) ("[E]ven if Plaintiff's shoulder pain was a serious medical need, the record establishes that the treatment Defendants provided him — over-the-counter pain medication and a referral to physical therapy — was adequate. Plaintiff's claim that he should have been referred to an orthopedic specialist, is insufficient to establish that Defendants acted with deliberate indifference."); *Martin v. McFadden*, No. 15-1570, 2016 WL 3727493, at *5 (D.S.C. June 17, 2016), *report and recommendation adopted*, 2016 WL 3688694 (D.S.C. July 12, 2016) ("The indisputable record shows that Martin was seen a substantial number of times by the medical department at Lieber during the approximately twenty-one months prior to filing his Complaint. Although Martin argues that the defendants refused to allow him to have surgery on his shoulder and appears to allege that he did not receive the medication of his choice, as stated above, a prisoner's disagreement unsupported by any expert testimony as to the appropriate treatment fails to rise to the level of a constitutional claim and fails to create a genuine issue of material fact."); *Mackler v. Chapman*, No. 11-45 WLS, 2011 WL 9521094, at *5 (M.D. Ga. May 11, 2011), *report and recommendation adopted*, 2012 WL 5879765 (M.D. Ga. Nov. 21, 2012) ("Plaintiff saw numerous physicians and other healthcare professionals over a six-month period, and all advised Plaintiff that surgery was not needed. Plaintiff was given pain medication and advised of physical therapy exercises which would improve his condition. It appears, of course, that Plaintiff would prefer to have surgery on his shoulder. However, as indicated above, Plaintiff's mere disagreement or disappointment with the

course of treatment chosen by his physicians is insufficient to state a claim for denial of medical care. No constitutional violation exists where an inmate and a prison medical official merely disagree as to the proper course of medical treatment.").

The cases principally cited by the plaintiff all are readily distinguishable because, unlike here, the circumstances in those decisions involved either the administration of treatment that had some potential for palliative effect on symptoms, but no efficacy at all for curing an underlying serious condition, or a decision to depart from a proven course of treatment that was working well, in favor of an alternative treatment that demonstrably failed.

In *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834 (6th Cir. 2002), for instance, the court of appeals confronted a record suggesting that the defendant physicians, despite providing "some care" for certain other conditions, had not taken any measures to foreclose a serious risk of harm due to the plaintiff's known unusual susceptibility to hyperthermia:

> Dr. Said was aware of the numerous health risks confronting the decedent. He knew that the decedent was an obese diabetic suffering from hypertension and a heart condition with abnormal EKG readings. In addition, he was also aware that the decedent was on medication which placed him at an increased risk for heat stroke. Moreover, Dr. Said also knew that the weather on July 31, 1995 was extremely hot and humid. Despite this information and his knowledge of seven or eight prior non-fatal hyperthermia cases at NRPH, as well as the decedent's susceptibility to heat stroke, Dr. Said failed to follow NRPH's protocol and write an order restricting the decedent to stay within a cool area on the day of his collapse and subsequent demise. As a result of Dr. Said's failure to follow hospital protocol, the decedent went outdoors, over-exerted himself, and collapsed due to the extreme weather conditions.

*Terrance*, 286 F.3d at 844. Here, there was no such total disregard for the plaintiff's shoulder injury, and nothing in the record suggests that treatment only was prescribed for unrelated conditions, while wholly ignoring the shoulder problem.

In *McCarthy v. Place*, 313 F. App'x 810 (6th Cir. 2008), a dentist had identified a cavity in the plaintiff's tooth that needed to be filled, but he delayed for seven months taking any action

- 13 -

to make the repair, instead providing only over the counter pain relievers for the pain caused by the festering tooth. *See id.* at 816 ("Dr. Place disregarded a risk of serious harm when he failed to temporarily fill McCarthy's cavity despite the fact that he knew of the pain McCarthy was experiencing and that he was familiar with more effective treatment options."). It is obvious even from a lay perspective that pain killers, no matter how effective, have no potential to repair a tooth cavity, especially when no therapy was directed to curing the underlying problem. Here, there is no medical evidence suggesting that physical therapy had no potentially curative effect, or that relying on physical therapy alone was equivalent to completely ignoring an underlying condition while giving only ineffective palliative care.

*Braddock v. Crompton*, No. 10-731, 2015 WL 6033003 (W.D. Mich. Aug. 20, 2015), likewise provides the plaintiff no help. There, the plaintiff's prison physician canceled a medication regimen that successfully had treated the plaintiff's painful skin condition for years, and instead began and continued a new prescription that turned out to be ineffective. *See id.* at *3 ("'[Dr.] Crompton . . . argues that Tegretol is a reasonable and effective alternative medication to Neurontin. But the Tegretol did not alleviate Braddock's pain, whereas Neurontin, which Braddock had been taking for several years, had already proven effective and been approved by the prison's pain management committee. Because a reasonable jury could find that Crompton disregarded a risk of serious harm when he failed to reinstate Braddock's Neurontin prescription despite knowing that Braddock was in severe pain, summary judgment was not appropriate.'" (quoting unpublished order in *Braddock v. Crompton*, No. 12-1354, slip op. at 2-3 (6th Cir. Mar. 15, 2013)). In this case, unlike in *Braddock*, there is no medical evidence suggesting that any alternative therapy previously was tried that had resolved the plaintiff's shoulder condition, or that

- 14 -

any previously successful course of treatment was abandoned in favor of a demonstrably inferior option.

Similarly, in *Darrah v. Krisher*, 865 F.3d 361 (6th Cir. 2017), the record showed that when the plaintiff was transferred to a new prison, his new doctors canceled a previously effective prescription because it was not on the new prison's drug formulary, and persisted in treating the plaintiff with an "alternative" drug that was ineffective, refusing to reinstate the prior regimen that had been shown to work. *Id.* at 364 ("Darrah was committed to the custody of the Ohio Department of Rehabilitation and Correction ('ODRC'). Prior to this, Darrah had been diagnosed with Palmo-Plantar-Hyper-Keratoderma ('HPK'), a severe form of psoriasis that causes debilitating pain from large and deep fissures that form on the bottom of the feet. In December 2006, Darrah was transferred to the Lebanon Correctional Institute ('LCI'), where dermatologists at the medical center examined his HPK and noted that it had been treated successfully with Soriatane, and that multiple other treatments had proven ineffective. Following this diagnosis, the LCI medical center prescribed Soriatane, a drug that was outside of the ODRC's 'Drug Formulary.'"); *see also id.* at 369 ("Darrah [] argues that there was deliberate indifference to his medical needs when, in April 2011, Defendants insisted on prescribing Methotrexate despite knowing that Soriatane was the only drug that had proven effective for Darrah's HPK. . . . Dr. Weil might be found liable . . . based on Darrah's claim that Defendants were deliberately indifferent for continuing to treat him with Methotrexate after Darrah had been on the drug for several months without any noticeable improvement."). Again, there is no evidence here suggesting that a previously identified effective treatment regimen was abandoned in favor of a demonstrably ineffective alternative.

III.

The magistrate correctly assessed the record and the claims in light of the proper legal authority. The plaintiff has not put forth any evidence that will establish the subjective component of his deliberate indifference claim against Dr. Kilaru.

Accordingly, it is **ORDERED** that the report and recommendation (ECF No. 130) is **ADOPTED**, defendant Ramesh Kilaru's motion for summary judgment (ECF No. 114) is **GRANTED**, the plaintiff's objections (ECF No. 131) are **OVERRULED**, and the plaintiff's claims against Dr. Kilaru **ONLY** are **DISMISSED WITH PREJUDICE**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   October 23, 2020